Isidor Wasservogel, Spec. Ref.
Plaintiff husband seeks to have the defendant wife account for the sum of approximately $25,000 on the ground that she obtained such moneys from him by fraud. Defendant counterclaims for a separation on the *264 grounds of abandonment, nonsupport and cruel and inhuman treatment.
The record shows that plaintiff, a native of Eoumania, a seaman by occupation, illiterate and practically unable to speak or to make himself understood in English, married defendant in this city on May 21, 1951. It is his contention that defendant fraudulently advised him that, as an alien seaman, it would be unsafe and illegal for him to hold or deposit his savings and earnings in bank accounts in his name alone, since they would then be subject to confiscation by the Federal Government. Plaintiff alleges that in reliance upon such misrepresentation and upon defendant’s purported promise that she would “ take good care of him and his money” and “make him a life partner ” in real properties she then owned or would acquire thereafter, he married her and gave her sums of money totalling approximately $25,000, for which she has refused to account or to return.
In addition to defendant’s counterclaim for a separation, her answer contains an affirmative defense that there is another action pending in the Supreme Court, Delaware County, between the same parties for the recovery of certain real property alleged to have been purchased by defendant in trust for plaintiff out of the moneys sought to be recovered here.
In the opinion of the court, this defense is wholly without merit and insufficient as a matter of law. Defendant has failed to allege or to prove that the Delaware County action is prior in time, or that it seeks the same relief for the same cause. In the absence of these necessary allegations, this defense must be deemed invalid on its face (Schroeder v. Ziring, 265 App. Div. 1058; Avery v. Title Guar. & Trust Co., 230 App. Div. 519; Grattan v. Societa Per Azzioni, 137 N. Y. S. 2d 235, 237; Baronberg v. Humphreys, 166 Misc. 100, 104).
Apart from the stated insufficiency of this defense, it further appears that the instant action and the action in Delaware County were both commenced on the same day, December 15, 1954, by the simultaneous service on defendant of a copy of the summons and complaint in each of said actions. Neither action, therefore, has priority in time and neither may be dismissed because of the pendency of the other (Avery v. Title Guar. & Trust Co., supra; Nacional Financiera S. A. v. Banco de Ponce, 85 N. Y. S. 2d 277, 278; Diamond v. Berman, 60 N. Y. S. 2d 339, 341).
The basic issue before the court is one of fraud. An examination of the record indicates that this case is a classic example *265 of a scheming, avaricious woman’s fleecing an ignorant and illiterate man of his life savings and earnings. The credible testimony and documentary evidence clearly establish that defendant told plaintiff innumerable lies in lier successful efforts to get him to entrust her with all of his moneys. She falsely and fraudulently told plaintiff that as an alien he could not own property in this country in his own name. She fraudlently advised him that because of his alien status, without visa, he could not inherit property in this country. Likewise, she told him that in order to avoid confiscation of his moneys by the Federal Government, it would be necessary for him to marry her and place these moneys in a joint bank account with her.
The credible testimony also showu that as a part of defendant’s concerted attempts to get possession of all of plaintiff’s savings and earnings, she falsely and fraudulently promised him that upon their marriage, he would become a joint owner with her in all of the real properties she then owned or would thereafter acquire. After their marriage, on several occasions, defendant deceitfully showed plaintiff various purported legal documents and told him that they represented the deeds to properties in their joint names when, in fact, all of the real estate acquired by defendant, both before and after her marriage to plaintiff, remained in her name alone.
Likewise, although defendant told plaintiff that their moneys were being kept in joint bank accounts for the benefit of both of them, she had, in fact, withdrawn all moneys from joint accounts on her signature alone, and either spent these funds or transferred them to other bank accounts in her own name. Defendant’s own admissions that she told plaintiff he was “half owner with her in her properties” and that she had exhibited to him the afore-mentioned purported deeds “ so he’d be satisfied * * * he always thought he owned the farm,” are corroborative proof of the testimony given by plaintiff. A more flagrant instance of planned and admitted defrauding can hardly be imagined than that practiced by this defendant upon plaintiff, her husband. In the opinion of the court, plaintiff’s proof of the fraud and deceit employed by defendant is so overwhelming as to make the latter’s counterclaim a mere sham. Although the credible proof does not establish defendant’s claims of cruelty, nonsupport and abandonment, the course of conduct engaged in by defendant both before and after her marriage to plaintiff would fully justify plaintiff in finally leaving her.
*266 Contrary to defendant’s assertions that she “ always tried to take care of him,” after she had relieved plaintiff of practically all of his worldly possessions, the credible testimony and documentary 'evidence establish that, by various means, both legal and illegal, defendant tried to rid herself of any ties to plaintiff. The record shows that (1) defendant tried to keep plaintiff from coming off his ship or landing in this country ; (2) defendant tried to have plaintiff permanently incarcerated in an insane asylum; (3) defendant attempted to have plaintiff deported; and (4) defendant removed plaintiff’s belongings from their house, refused to permit him to enter therein, and advised him of her intentions to obtain a divorce or annulment. Likewise, although defendant claims plaintiff abandoned her on September 8, 1954, it appears from the record that as a result of defendant’s attempt to have him permanently committed, as above noted, plaintiff was not released from Bellevue Hospital until on or after September 28, 1954. Moreover, the documentary proof establishes that within a day or two after plaintiff’s release from Bellevue Hospital, defendant withdrew her sponsorship of plaintiff’s application for a visa, in another attempt to have him deported from this country as an alien. Thereafter, when plaintiff was unable to obtain employment, defendant made him apply for unemployment insurance. Upon his receipt of each weekly check of $32, defendant charged him $20 a week for room and board, refused to give him any money to pay his union dues and doled out just enough daily for so-called “ cigarette rations.” This, despite her protestations upon the trial that “ she always took care of him.”
Significantly, most of the foregoing facts, while established by plaintiff, were almost totally uncontradicted by defendant. Plaintiff’s testimony is in accord with all of the documentary evidence in the case, including those submitted by defendant. Defendant’s account of the receipt by her of plaintiff’s savings and earnings and his alleged premarital gift to her of $10,000, in the opinion of the court, is unworthy of belief.
In view of the fact that the exact amount of moneys fraudulently received by defendant from plaintiff is in dispute and has not been adequately established on this trial, an interlocutory judgment is rendered in favor of plaintiff. Within 20 days from the receipt by defendant of a copy of said interlocutory judgment, together with notice of entry thereof, defendant shall serve and file an account of all moneys received by her from plaintiff. Plaintiff may then have 10 days to serve and file objections thereto. The account will be taken and stated in *267 Part XXIX of this court on October 26, 1959, at 10:00 a.m. Upon such accounting, the court will also take proof of the receipt by defendant of any income from the properties here involved and of defendant’s requirements as to her maintenance and support while she and plaintiff were living together as husband and wife, for which plaintiff may be deemed obligated to pay. Defendant’s counterclaim for a separation is dismissed upon the merits.
Submit interlocutory judgment within 10 days on three days ’ notice. No costs are awarded.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.